UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
In re:

Application of CHEVRON                                  10 MC 00001 (LAK)

This Document Applies to:  ALL CASES
------------------------------------------------------------------ x

### DECLARATION OF KRISTEN L. HENDRICKS (1) IN FURTHER SUPPORT OF CHEVRON CORPORATION'S MOTION FOR A PRESERVATION ORDER AND TO SUPPLEMENT AND ENFORCE THE SUBPOENAS, AND (2) IN OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR AN ORDER COMPELLING CHEVRON CORPORATION TO COMPLY WITH SECOND CIRCUIT'S ORDER

I, Kristen L. Hendricks, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney licensed to practice law in the State of New York and before this Court. I am an associate in the law firm of Gibson, Dunn & Crutcher, LLP, counsel of record for Chevron Corporation ("Chevron") in the above-captioned matter. I make this declaration, based on personal knowledge, (1) in further support of Chevron's Motion for a Preservation Order and to Supplement and Enforce the Subpoenas, and (2) in opposition to Respondents' Cross-Motion for an Order Compelling Chevron Corporation to Comply with Second Circuit's Order. If called as a witness, I could and would testify to the same as stated herein.

2. Attached hereto as **Exhibit 1** is a CD containing selected excerpts from the unreleased footage from the movie *Crude*.

3. Attached hereto as **Exhibit 2** is a DVD containing the same selected video excerpts that are contained on Exhibit 1.

1

4. Attached hereto as **Exhibit 3** are true and correct copies of certified transcriptions and translations of the video files contained on Exhibits 1 and 2.

5. The excerpts included on Exhibits 1 and 2 are segments of video excerpted from digitized copies of film footage produced by Joseph Berlinger, the filmmaker of *Crude*, pursuant to the orders of this Court and the Court of Appeals for the Second Circuit. On July 19, 2010, Joseph Berlinger began producing to Chevron unreleased footage gathered during the filming of *Crude*. The digitized copies were created, pursuant to Mr. Berlinger's request, by a reputable post production house called PostWorks New York, located in New York City.

6. I have reviewed both the video files contained on Exhibits 1 and 2 and the transcriptions and translations of these video files contained in Exhibit 3.

7. During the course of my representation of Chevron, I have developed personal knowledge of the visual identities of the following individuals:

- Richard Cabrera (court expert in the Lago Agrio Litigation)
- Steven Donziger (counsel for Plaintiffs)
- Pablo Fajardo (counsel for Plaintiffs)
- Joseph Kohn (counsel for Plaintiffs)
- Luis Yanza (coordinator for Plaintiffs and representative of the Amazon Defense Front or Frente de Defensa de la Amazonia)
- Atossa Soltani (founder and director of Amazon Watch)
- Leila Salazar (Rainforest Agribusiness Campaign Director, Amazon Watch Board Member)
- Richard ("Dick") Kamp (of E-Tech International, Plaintiffs' consultant)
- Ann Maest (of E-Tech International and Managing Scientist at Stratus, Plaintiffs' consultants)
- Joshua Lipton (CEO of Stratus)
- Douglas Beltman (of Stratus)
- David Chapman (of Stratus)
- Preston Sewell (of Stratus)
- Charles Champ (of Champ Science and Engineering, Plaintiffs' consultant)
- Luis Villacreces (Plaintiffs' expert)
- Luis Macas (leader of the Confederación de Nacionalidades Indigenas de Ecuador, a group of indigenous people in Ecuador)

8.      I have confirmed the identification of the individuals in Paragraph 7 in the video files contained on Exhibits 1 and 2 with other attorneys who represent Chevron.  In addition, I have consulted various third-party resources to confirm the identities of these individuals.  For example, I have viewed the movie *Crude* in its entirety.  Richard Cabrera, Steven Donziger, Pablo Fajardo, and Luis Yanza are identified by name and role in the movie.  I have also visited Stratus's website (http://www.stratusconsulting.com) and viewed pictures of Josh Lipton, Douglas Beltman, David Chapman, and Ann Maest.  I have also visited E-Tech International's website (http://www.etechinternational.org) and viewed pictures of Richard Kamp.

9.      The video file identified on Exhibits 1 and 2 as CRS-129-00-CLIP-02 (1:53) depicts Steven Donziger with Leila Salazar and another man at a restaurant, according to Berlinger's Annotated Tape Log (attached hereto as Exhibit 4).  Salazar observes that no judge would rule against the Plaintiffs because "[h]e'll be killed."  Donziger agrees, then comments, "He might not be, but . . . he thinks he will be . . . .  Which is just as good."  Donziger then states, "You can solve anything with politics as long as the judges are intelligent enough to understand the politics . . . .  [T]hey don't have to be intelligent enough to understand the law, just as long as they understand the politics."  *See* Exhibit 3 (attached hereto) at 2-4.

10.     The video file identified on Exhibits 1 and 2 as CRS-133-49-CLIP-01 (0:50) depicts Steven Donziger in December 2006 according to Berlinger's footage log (attached hereto as Exhibit 4).  Donziger tells the film crew that he is going to meet with "the new President of Ecuador who just got elected, the new Minister of PetroEcuador, the state oil company.  We are going to try to meet with the new Minister of Energy, all the key people and explain to them the case."  *See* Exhibit 3 (attached hereto) at 7.

11. The video file identified on Exhibits 1 and 2 as CRS-169-05-CLIP-09 (0:23), shot on January 31, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4), depicts a portion of a meeting (the "January 31st Meeting") in Philadelphia, Pennsylvania, between Steven Donziger and Joseph Kohn. Donziger says that Chevron is alleging a "conspiracy" between Plaintiffs and the Ecuadorian government. After Donziger lists a number of allegations, Kohn says, "If only they knew." *See* Exhibit 3 (attached hereto) at 9.

12. The video file identified on Exhibits 1 and 2 as CRS-169-05-CLIP-10 (0:30), depicts a portion of the January 31st Meeting. Donziger and Kohn discuss the proceedings before Judge Sand in *Republic of Ecuador v. ChevronTexaco Corp.*, No. 04 Civ. 8378 (S.D.N.Y.). Donziger states that Ecuador's counsel "did a response to Chevron's statement of undisputed facts . . . and I—I'll send it to you, I mean I don't have the final . . . . I was helping them with it last night." *See* Exhibit 3 (attached hereto) at 11.

13. The video file identified on Exhibits 1 and 2 as CRS-170-00-CLIP-00 (1:07) depicts a portion of the January 31st Meeting. Donziger and Kohn discuss a report that the Attorney General of Ecuador gave to the U.S. Department of Justice. Donziger explains to Kohn that "they [*i.e.*, the Ecuador Attorney General's office] don't even know how to put out a press release, much less write a report." He continues, "So, we did the work for him . . . . Gave it to him." Donziger claims that the Attorney General then forwarded the report with a "covering letter." Kohn comments, "So, again, that may be something that we could facilitate going away at the right time . . . . if they wanted it to go away." Donziger replies, "Precisely." *See* Exhibit 3 (attached hereto) at 14-15.

14. The video file identified on Exhibits 1 and 2 as CRS-170-00-CLIP-01 (0:51) depicts a portion of the January 31st Meeting. Donziger states that "Raul," a litigator, provided

him with a "piece of information" "in confidence." Donziger states that he told Raul, "'Don't you want to tell Sand that before the summary judgment motions are decided?'" and "'How you gonna feel if they decide against you and you never told him that?,'" referring to Judge Sand, who presided over *Republic of Ecuador v. ChevronTexaco Corp.*, No. 04 Civ. 8378 (S.D.N.Y.). Donziger notes that "Raul's like, 'Oh it's a bar violation.'" Donziger relays that he told Raul, "'Forget the bar.'" *See* Exhibit 3 (attached hereto) at 18-19.

15.     The video file identified on Exhibits 1 and 2 as CRS-189-01-CLIP-01 (1:00), shot on March 3, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4), depicts a portion of a meeting (the "March 3rd Meeting") among members of the Plaintiffs' legal team (including Steven Donziger, Pablo Fajardo, and Luis Yanza), Plaintiffs' technical team (including Ann Maest, Richard Kamp, Charles Champ) and Richard Cabrera, who was officially appointed two weeks after the meeting to be the "independent" court expert in the Lago Agrio litigation. Pablo Fajardo talks about a well site called Charapa-1. Luis Yanza explains that Plaintiffs' "friends from the other side" use the roads there. Donziger tells Maest this is the FARC. *See* Exhibit 3 (attached hereto) at 21-22.

16.     The video file identified on Exhibits 1 and 2 as CRS-198-00-CLIP-04 (2:16) depicts Steven Donziger on March 4, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4) leading a legal strategy meeting among Plaintiffs' representatives, including Luis Yanza. The participants discuss the prosecutor's call for criminal charges and their plants to get leaders of different groups, including Luis Macas, to sign a letter to the prosecutor.

17.     The video file identified on Exhibits 1 and 2 as CRS-210-02-CLIP-01 (3:21) depicts Luis Macas on March 6, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4), discussing a meeting with the judge in which they spoke about the global assessment.

18.     The video file identified on Exhibits 1 and 2 as CRS-268-00-CLIP-01 (0:59) depicts Steven Donziger on April 26, 2007, in Boulder, Colorado, according to Berlinger's footage log (attached hereto as Exhibit 4). First, talking on the phone, Donziger says that it might be time to "ask for the head of Pérez Pallares—given what the President said." He then explains, "It's awesome. He [Correa] made the—he said the right things—all the—the entire Ecuadorian press corps was there and he's basically calling for the heads of government officials that signed off on the remediation, and he's totally with us." *See* Exhibit 3 (attached hereto) at 34.

19.     The video file identified on Exhibits 1 and 2 as CRS-269-01-04-CLIP-03 (00:24), shot on April 26, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4), depicts the beginning of a meeting (the "April 26th Meeting") held at Stratus's office. The video file shows Ann Maest at the meeting. Donziger confirms that David Chapman, Josh Lipton, Preston Sowell, and Douglas Beltman are also present.

20.     The video file identified on Exhibits 1 and 2 as CRS-269-01-04-CLIP-05 (2:26) depicts a portion of the April 26th Meeting. Donziger explains that they recently got an order that the damages claim needs to be finished in 120 days. Donziger refers to the memorandum he has put together on "the categories of damages that we are entitled to present to the court," including the remediation plan, which "we're already working with somebody" on, but which "still needs to be significantly beefed up." *See* Exhibit 3 (attached hereto) at 38-39.

21.     The video file identified on Exhibits 1 and 2 as CRS-269-01-05-CLIP-01 (0:31) depicts a portion of the April 26th Meeting. It zooms in on the memorandum from Steven Donziger to Josh Lipton, "Overall Ecuador Work Plan, April 22, 2007." The memo lays out the "Categories of Damages In Ecuador Litigation," and on the first page discusses three of those

categories: Remediation Plan ("The components are: 1) pits; 2) groundwater; 3) re-injection; 4) gas flaring; 5) general infrastructure improvements; 6) rivers, streams, and sediments"), Degraded Habitat, and Indigenous Rights.

22. The video file identified on Exhibits 1 and 2 as CRS-269-01-08-CLIP-01 (0:43) depicts a later part of the April 26th Meeting. Josh Lipton recaps some of the damages categories discussed and says to Steven Donziger, "we loved the whole package." *See* Exhibit 3 (attached hereto) at 41.

23. The video file identified on Exhibits 1 and 2 as CRS-350-03-CLIP-01 (5:05), shot on June 6, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4), depicts a portion of a meeting (the "June 6th Meeting") attended by Steven Donziger, Atossa Soltani, Luis Yanza, Kevin Koenig, and Luis Villacreces. Soltani states that Petroproducción, the operational division of Petroecuador, has been "contaminating the ground water." Donziger agrees that "[a]lthough they say they are re-injecting, we know that it is really inadequate." *See* Exhibit 3 (attached hereto) at 45.

24. The video file identified on Exhibits 1 and 2 as CRS-350-04-CLIP-01 (3:05), depicts a portion of the June 6th Meeting. Donziger states that Plaintiffs "were getting, like, everything, for a while, that we wanted. You know, we got the cancellation of the inspections. You know, we we[]re getting the *peritaje global*, the final phase." Donziger sets out the next steps that need to be taken: "[W]e need to do more, politically, to control the court, to pressure the court. We believe they make decisions based on who they fear the most, not based on what the laws should dictate. So what we want to do is take over the court with a massive protest . . . ." He adds, "[I]t's a critically important moment, because we want to send a message to the

7

court that, 'don't fuck with us anymore—not now, and not—not later, and never.' 'Cause we have been weak on the political pressure." *See* Exhibit 3 (attached hereto) at 50-52.

25. The video file identified on Exhibits 1 and 2 as CRS-350-04-CLIP-02 (7:23), depicts a portion of the June 6th Meeting. The participants discuss actions to pressure the court. Donziger states that Plaintiffs need their "own army," a "specialized group" detailed "to watch over the court." Soltani asks if "anybody can, uh, subpoena these videos." Donziger responds that "we don't have the power of subpoena in Ecuador." Soltani asks, "What about U.S.?" She continues, "I just want you to know that it's—it's illegal to conspire to break the law." *See* Exhibit 3 (attached hereto) at 54-55.

26. Donziger says that Plaintiffs need "a force, a political force that the judges can see. Then, we start with five hundred people at the court and after that—all that, followed by twenty, thirty people, paid by us . . . ." Yanza adds that they would need "minimal training . . . so they do a good job for us. That's it. And then, if it goes well, and we need, uh, if we need weapons, we can provide weapons." Donziger states they also need "Money. It's basically a project that requires us to pay to find the people and pay them for their time." He adds, "I think we need, like, a hundred grand." *See* Exhibit 3 (attached hereto) at 55-57.

27. Donziger then states, "[W]hile we can do all the legal briefs in the world and host all the visitors who want to come, if we don't show power in the court, we're not gonna finish this case . . . . The meetings with the judge, like you guys had yesterday, I think, are of minimal effect." He continues, "The army project is not a new project. I mean, it's—it's—it's an effort to step up the political power we have in the court, at the point of contact, where they're gonna feel it the most." *See* Exhibit 3 (attached hereto) at 59-60.

8

28. The video file identified on Exhibits 1 and 2 as CRS-376-03-CLIP-01 (1:28), shot on June 8, 2007, according to Berlinger's footage log (attached hereto as Exhibit 4), depicts a portion of a meeting (the "June 8th Meeting") at Selva Viva headquarters. It depicts Pablo Fajardo who reports to the team that he and others spoke with President Correa who suggests pressuring the prosecutor to "re-open that investigation into the fraud of—of the contract between Texaco and the Ecuadorian Government." *See* Exhibit 3 (attached hereto) at 62.

29. The video file identified on Exhibits 1 and 2 as CRS-376-04-CLIP-01 (1:30) depicts a portion of the June 8th Meeting. Steven Donziger states that Plaintiffs need to control and pressure the judge, in part by using the President's influence: "[l]ike the President of the country calling him out." Donziger also talks about "pressuring the national prosecutor to open criminal cases." *See* Exhibit 3 (attached hereto) at 65.

30. Attached hereto as **Exhibit 4** is a true and correct copy of the Crude Annotated Tape Log, produced by Joseph Berlinger to Chevron on July 20, 2010 and revised on July 27, 2010.

31. Attached hereto as **Exhibit 5** is a true and correct copy of a letter from Maura Wogan to Randy M. Mastro, dated August 6, 2010.

32. Attached hereto as **Exhibit 6** is a true and correct copy of Berlinger's "original production log" produced by Berlinger to Chevron on August 6, 2010, and printed from native format.

33. Attached hereto as **Exhibit 7** is a true and correct copy of a privilege log, produced by Berlinger to Chevron on August 6, 2010.

34. Attached hereto as **Exhibit 8** is a true and correct copy of a letter from Maura Wogan to Randy M. Mastro, dated August 9, 2010.

35. Attached hereto as **Exhibit 9** is a true and correct copy of the Reply Brief for Respondents-Appellants Joseph A. Berlinger, et al., *In re Application of Chevron*, Nos. 10-1918(L), 10-1966(CON) (2d Cir. June 25, 2010).

36. Attached hereto as **Exhibit 10** is a true and correct copy of a preliminary transcription of a July 14, 2010 hearing before the United States Court of Appeals for the Second Circuit, in the case of *In re Application of Chevron*, Nos. 10-1918(L), 10-1966(CON). Approval of the transcript from the Second Circuit panel is pending.

37. Attached hereto as **Exhibit 11** is a true and correct copy of a transcript of a hearing before this Court on April 30, 2010.

38. Attached hereto as **Exhibit 12** is a true and correct copy of a privilege log provided by Plaintiffs in the related case of *Chevron Corp. v. Stratus Consulting, Inc., et al.*, No. 10-cv00047-JLK (D. Col) on August 6, 2010.

39. Attached hereto as **Exhibit 13** is a true and correct copy of a transcript of a hearing before this Court on May 19, 2010.

40. Attached hereto as **Exhibit 14** is a true and correct copy of a privilege log, produced by Berlinger to Chevron on August 9, 2010.

41. Attached hereto as **Exhibit 15** is a true and correct copy of an order issued by this Court, dated May 10, 2010.

42. Attached hereto as **Exhibit 16** is a true and correct copy of Appellee Chevron Corp.'s Sur-Reply to Respondents-Appellants' Reply Memorandum in Further Support of their Emergency Motion for Stay and Expedited Appeal, *In re Application of Chevron*, Nos. 10-1918(L), 10-1966(CON) (2d Cir. June 2, 2010).

43. Attached hereto as **Exhibit 17** is a true and correct copy of the Brief for Petitioner-Appellee Chevron Corp., *In re Application of Chevron*, Nos. 10-1918(L), 10-1966(CON) (2d Cir. June 21, 2010).

44. Attached hereto as **Exhibit 18** is a true and correct copy of an article published by United Press International (UPI) entitled *Director wary of Chevron claims in Ecuador*, dated August 9, 2010, *available at* http://www.upi.com/Science_News/Resource-Wars/2010/08/09/Director-wary-of-Chevron-claims-in-Ecuador/UPI-79691281360866/.

45. Attached hereto as **Exhibit 19** is a true and correct copy of a letter from Ilann Maazel to this Court, dated August 9, 2010.

46. Attached hereto as **Exhibit 20** is a true and correct copy of an article published by *The American Lawyer*, written by Michael D. Goldhaber and entitled *The Global Lawyer: Plaintiffs' Counsel Suing Chevron in Ecuador Engaged in Some Crude Lawyering*, dated August 11, 2010, *available at* http://www.law.com/jsp/tal/digestTAL.jsp?id=1202464429804&The_Global_Lawyer_Plaintiffs_Counsel_Suing_Chevron_in_Ecuador_Engaged_in_Some_Crude_Lawyering&slreturn=1&hbxlogin=1.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of August, 2010 at New York, New York.

Kristen L. Hendricks