UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE:                                              :
                                                    :
Application of CHEVRON                              :      10 MC 00001 (LAK)
                                                    :
This Document Applies to:  ALL CASES                :
------------------------------------------------------------X


# RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO FILE A FURTHER OPPOSITION TO CHEVRON CORPORATION'S MOTION TO SUPPLEMENT AND ENFORCE SUBPOENAS

Maura J. Wogan
Jeremy S. Goldman
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue, 10th Floor
New York, NY 10022
Tel:  (212) 980-0120
Fax: (212) 593-9175
mwogan@fkks.com
jgoldman@fkks.com

Lee Levine (*pro hac vice* applicant)
David A. Schulz
Seth D. Berlin
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 W. 44th Street, Suite 510
New York, NY 10036
Tel: (212) 850-6100
Fax: (212) 850-6299
llevine@lskslaw.com
dschulz@lskslaw.com
sberlin@lskslaw.com

*Attorneys for Respondents Joe Berlinger, Michael Bonfiglio, Third Eye Motion Picture Company, Inc., Crude Productions, LLC and @radical.media LLC*

Filmmakers respectfully submit this reply memorandum in support of their Motion for Leave to File a Further Opposition to Chevron Corporation's Motion to Supplement and Enforce Subpoenas:

The instant Motion for Leave raises only one question – whether the Filmmakers should be granted leave to file a supplemental brief to address new evidence and new arguments first presented by Chevron in its reply brief in support of its Motion to Supplement and Enforce Subpoenas. Despite this, Chevron uses its opposition to the Motion for Leave to continue its broadside attack on Filmmakers, devoting the bulk of its submission to substantive arguments that Filmmakers were engaged in "collusion with" and "doing a propaganda piece for the Plaintiffs' lawyers," Opp. at 1, 3, or were somehow "an accessory" to "Plaintiffs' counsel's misconduct and fraud," and attempting to place yet another new video clip in the record.[1] This is plainly improper, and the irony of doing so in the service of complaining that the Filmmakers have purportedly done the same thing is apparently lost on Chevron. *See* Opp. at 5 (conceding that advancing arguments when not authorized is "not permitted simply to satisfy a party's desire to have the last word").

Turning to the question at hand – whether Chevron's reply brief presented new arguments and evidence warranting an opportunity for Filmmakers to respond – there is little

---

[1] Chevron asserts that this clip reflects a concession by Mr. Berlinger that "he was not acting as a journalist when filming and editing *Crude*," "that he effectively turned over editorial control" to plaintiffs' counsel , and that his film "was not cinema vérité" but rather "'cinema fake-ité.'" Opp. at 3 & n.2. According to Chevron, this is so because Mr. Donziger and the filmmakers are depicted in the clip supposedly "discussing bringing onions with them to make one of their interview subjects cry." *Id.* In fact, the actual clip makes clear that the persons depicted were *joking* about doing so while noting that, *if* they were to do so, the film might not be a genuine reflection of the actual suffering endured by residents of the Ecuadorian Amazon. In any event, Chevron's (mis)characterization of yet another snippet of outtakes is entirely irrelevant to the question actually before the Court on this motion – *i.e.*, whether Chevron raised new matter in its Reply and whether a sureply is therefore appropriate.

1

question that the Motion for Leave should be granted. Chevron's Reply Memorandum was avowedly chock full of newly identified evidence and newly minted arguments, beyond simply responding to the Filmmakers' Opposition. *See, e.g.*, Chevron Reply on Motion to Supplement and Enforce Subpoenas at 1 (conceding that there was "new evidence in Chevron's reply"); *id.* (referring to new "additional evidence" found from Chevron's "ongoing review" of the outtakes produced by Filmmakers); *id.* at 2 (conceding that the reply contained "'new evidence'" including "newly-discovered video clips"); *id.* at 5 (referring to evidence that "Chevron has now discovered"); *id.* at 6 (referring to newly-attached document concerning Dr. Beristain); *id.* at 8 (referring to "[t]he latest outtakes reviewed," and identifying three specific examples); *id.* ("Chevron continues to uncover compelling evidence"); *id.* at 8-9 (relying on "[a]ll of these recent developments, and the revealing evidence still emerging from our ongoing review" of the outtakes); *id.* at 11-12 (raising arguments not raised in initial Motion that (a) there is a "crime-fraud" exception to the journalist's privilege and (b) journalist's privilege may be completely abrogated by some sort of subject matter waiver); *id.* at 12 (relying on and attaching public statement by Mr. Berlinger on August 9 that was, by definition, not discussed in Chevron's original Motion filed on August 3); *id.* (relying on and attaching August 11 news article that was, by definition, not referenced in Chevron's August 3rd Motion or Filmmakers' August 10th Opposition). *See also* Declaration of Kristen Hendricks in Support of Chevron's Reply Memorandum (attaching 20 exhibits, including two containing nineteen additional film clips). In these circumstances – *i.e.*, when "responding to a new factual issue raised on reply" – Chevron concedes, as it must, that "a surreply [is] permitted" in "'addressing the issue of the [new evidence's] impact on the pending motion.'" Opp. at 2 n.1 (quoting *Duraku v. Tishman Speyer Properties, Inc.*, 2010 WL 2142581 (S.D.N.Y. May 27, 2010)).

2

Filmmakers' Proposed Surreply and Mr. Berlinger's Supplemental Declaration respond to this evidence and argument, including *inter alia*:

(a) the film clips submitted with Ms. Hendricks' Reply Declaration;

(b) the current state of the production of outtakes (which had been misrepresented in Chevron's Reply), including an offer to permit counsel for Chevron to review the unproduced outtakes to satisfy themselves that the production is complete, *see* Proposed Supplemental Memorandum at 5 & n.4; and

(c) Chevron's argument, not raised in its opening brief, that publication of certain information waives the journalist's privilege for all purposes – an argument undercut by the very nature of the privilege as applied to unpublished, nonconfidential information, which is premised on the notion that, until and unless the journalist decides to disseminate such information to others, he is presumptively privileged to withhold it.

Filmmakers' Supplemental Memorandum also addressed the Court's jurisdiction to entertain a request for relief that exceeded the Second Circuit's limited order. Chevron contends that Respondents waived this argument, *see* Opp. at 6, but subject matter jurisdiction is a prerequisite to judicial action that can be raised at any time. *See Zhong v. Dep't of Justice*, 489 F.3d 126, 129 (2d Cir. 2007) ("subject-matter jurisdiction cannot be waived") (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)); *Arbaugh*, 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (citations omitted); *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction,

3

because it involves the court's power to hear a case, can never be forfeited or waived.").[2] Here, the Second Circuit's order directed the production of videotaped footage – and only videotaped footage – and provided that "disputes related to the performance of *this order* shall be directed to the district court for resolution." July 15, 2010 Order at 1-2 (emphasis added). Filmmakers respectfully submit that where, as here, the Second Circuit has indicated that an "opinion" will "follow" its order and has not issued its mandate, other proceedings designed to request email or wide-ranging deposition testimony (other than to authenticate the footage produced) exceed the scope of this Court's jurisdiction. *See, e.g., Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) (filing of appeal "divest[s] district court of jurisdiction").

Finally, Filmmakers are constrained to address the new substantive argument, raised by Chevron's Opposition to the Motion for Leave, that the reporters' privilege recognized in this Circuit does not "'protect[ ] a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof.'" Opp. at 4-5 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 692 (1972)). In *Branzburg*, the Court addressed the very different circumstances of evidence sought by a grand jury in connection with an actual prosecutorial investigation of criminal misconduct – ranging, in the combined cases, from reporters' direct observation of the violation of gun laws and threats of civil disorder by the Black Panther Party (*Caldwell* and *Pappas*) to illegal manufacture of narcotics (*Branzburg*). *See* 408 U.S. at 701 (Court's analysis focused on "extirpating the traffic in illegal drugs, in forestalling assassination attempts on the President,

---

[2] Neither of the authorities Chevron cites in support of its contention addresses waiver of subject matter jurisdiction. *See* Opp. at 6 (citing *NML Capital, Ltd. v. Republic of Argentina*, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (substantive argument about interest on a contract); *Morgan ex rel. Morgan v. Barnhart*, 2005 WL 2338709, at *1-2 (S.D.N.Y. Sept. 26, 2005) (substantive argument about administrative law proceeding and expressing disfavor as to the "piecemeal presentation of evidence")).

4

and in preventing the community from being disrupted by violent disorders endangering both persons and property"). Thus, the Court expressly limited the question presented to whether courts could require "newsmen to appear and testify before state or federal *grand juries*" because a grand jury is an "'instrument of justice'" that constitutes an important tool in "fair and effective law enforcement." *Id.* at 667, 687 (citation omitted) (emphasis added); *compare Gonzales v. National Broad. Co.*, 194 F.3d 29, 30 (2d Cir. 1999) ("explicitly reaffirm[ing]" journalist's privilege in both civil and criminal cases in this Circuit, even "for nonconfidential press information").

Here, of course, there is no grand jury investigating or subpoenaing information or testimony about alleged criminal conduct by the Lago Agrio plaintiffs' lawyers. All we have is Chevron's assertions, disputed by the plaintiffs' lawyers, that their conduct is improper. Simply put, a third party's assertion that its litigation adversary engaged in criminal conduct is different in kind from the grand jury investigations of criminal conduct at issue in *Branzburg* and is insufficient as a matter of law to abrogate the journalist's privilege. *See, e.g., United States v. Burke*, 700 F.2d 70, 75 (2d Cir. 1983) (even in criminal case, privilege applies to protect journalist from compelled disclosure of confidential information); *Gonzales*, 194 F.3d at 36 (holding that privilege presumptively protects from compelled disclosure in civil litigation video footage purportedly depicting criminal conduct by police officer).[3] And, unlike in *Gonzales*, where the party seeking to compel disclosure had made the necessary efforts to exhaust alternative sources and had demonstrated that the information sought – unique video footage of

---

[3] Chevron's citation to *United States v. Cutler*, 6 F.3d 67 (2d Cir. 1993), is unavailing for the same reason. That case involved an *actual* proceeding, in which a judge of this Court had appointed a special prosecutor to investigate conduct by *Cutler* alleged to have been witnessed first hand by the reporters, not merely charges of misconduct leveled by private parties that is not the subject of investigation by any grand jury or prosecutor.

5

the events at issue – satisfied the "less rigorous" standard applicable to unpublished information not received in confidence, *id.*, in this case, Chevron seeks to compel the disclosure of confidential information not captured on videotape and it has not even attempted to make the requisite showing.

For each and all the foregoing reasons, Filmmakers Motion for Leave should be granted.

Dated: August 23, 2010
New York, New York

Respectfully submitted,

   /s/ Maura J. Wogan
Maura J. Wogan
Jeremy S. Goldman
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue, 10th Floor
New York, NY 10022
Tel:  (212) 980-0120
Fax: (212) 593-9175
mwogan@fkks.com
jgoldman@fkks.com

Lee Levine (*pro hac vice* applicant)
David A. Schulz
Seth D. Berlin
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 W. 44th Street, Suite 510
New York, NY 10036
Tel: (212) 850-6100
Fax: (212) 850-6299
llevine@lskslaw.com
dschulz@lskslaw.com
sberlin@lskslaw.com

*Attorneys for Respondents*